ELECTRONICALLY FILED - 2019 Dec 18 8:50 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006538

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF CHARLESTON | ) | NINTH JUDICIAL CIRCUIT |
| | ) | |
| ARKEIN CAMPBELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **SUMMONS** |
| CITY OF NORTH CHARLESTON, | ) | |
| NORTH CHARLESTON POLICE | ) | |
| DEPARTMENT, EDDIE DRIGGERS, in | ) | |
| his OFFICIAL CAPACITY as FORMER | ) | |
| CHIEF OF POLICE for the NORTH | ) | |
| CHARLESTON POLICE DEPARTMENT, | ) | |
| and KATELYN ARNOLD, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**TO:    THE DEFENDANTS ABOVE NAMED**

**YOU ARE HEREBY SUMMONED** and required to answer the Complaint in this action, a copy of which is herewith served upon you, and to serve a copy of your answer to said Complaint upon the subscriber at his office at 171 Church Street, Suite 160, Charleston, South Carolina, 29401 within thirty (30) days after service hereof, exclusive of the day of such service.

**YOU ARE HEREBY GIVEN NOTICE FURTHER** that if you fail to appear and defend and fail to answer the Complaint as required by this Summons within thirty (30) days after the service hereof, exclusive of the day of such service, judgment by default will be entered against you for the relief demanded in the Complaint.

Respectfully Submitted,
CLEKIS LAW FIRM, P.A.
*/s/ John T. Gentry, III*
John T. Gentry, III, Esq.
S.C. Bar No. 101527
john@clekis.com
Post Office Box 1867 (29402)
171 Church Street, Suite 160
Charleston, SC 29401
T*843.720.3737 *
F*843.577.0460
**ATTORNEY FOR PLAINTIFF**

Charleston, South Carolina
December 18, 2019

ELECTRONICALLY FILED - 2019 Dec 18 8:50 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006538

STATE OF SOUTH CAROLINA    )    IN THE COURT OF COMMON PLEAS

)

COUNTY OF CHARLESTON    )    NINTH JUDICIAL CIRCUIT

ARKEIN CAMPBELL,

Plaintiff,

v.

CITY OF NORTH CHARLESTON,
NORTH CHARLESTON POLICE
DEPARTMENT, EDDIE DRIGGERS, in
his OFFICIAL CAPACITY as FORMER
CHIEF OF POLICE OF THE NORTH
CHARLESTON POLICE
DEPARTMENT, and KATELYN
ARNOLD,

Defendants.

**COMPLAINT AND JURY DEMAND**

The Plaintiff, Arkein Campbell demands a jury trial, and moves this Court for entry of judgment in his favor against the Defendants named herein, and in support of such complaint avers as follows:

**NATURE OF ACTION**

1.    Plaintiff brings this action for damages he suffered due to the excessive and unlawful use of a Taser against him by Defendant North Charleston Police Department Officer Katelyn Arnold. The Defendant-Officer used excessive force that violated the Plaintiff's constitutional rights—including, but not limited to—his right to be free from excessive and unreasonable force in the course of searches and seizures as secured by the Fourth and Fourteenth Amendments. Moreover, the

ELECTRONICALLY FILED - 2019 Dec 18 8:50 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006538

violations committed by the Defendant Officer Katelyn Arnold was both committed under color of law, and affirmatively and proximately caused by both the official policies and customs of the Defendants City of North Charleston and the North Charleston Police Department through both deliberate indifference and gross negligence, as well as the individual and supervisory liability of Defendant Former Chief of Police Eddie Driggers, in his Official Capacity.

## JURISDICTION AND VENUE

2.      This action is filed in the Court of Common Pleas in the Ninth Judicial Circuit of the State of South Carolina, and includes federal causes of action under said court's concurrent jurisdiction to hear claims arising under the Fourth and Fourteenth Amendments of the United States Constitution, brought pursuant to 42 U.S.C. § 1983 and 1988.

3.      This civil action is brought against both Defendant-entities and individuals for committing acts and omissions, as well as maintaining regulations, policies and customs—under color of law—with the intent and purpose of depriving the Plaintiff of his rights secured under the Constitution and laws of the United States.

4.      This Court has jurisdiction over this matter pursuant to S.C. Code § 15-78-10 *et seq.*, as well as concurrent jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

5.      This Court is an appropriate venue for this cause of action pursuant to S.C. Code § 15-78-10 *et seq.*, as the actions complained of took place in the County of Charleston and is the subject of defendant-municipal organizations domiciled within the County of Charleston, State of South Carolina.

## PARTIES

ELECTRONICALLY FILED - 2019 Dec 18 8:50 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006538

6.      That Plaintiff Arkein Campbell (herein "Plaintiff Campbell," "Mr. Campbell," "Campbell," or "Plaintiff") is a domiciliary of the County of Charleston, State of South Carolina.

7.      Defendant Patrol Officer Katelyn Arnold (herein "Defendant Arnold," "Arnold," or "Defendant") was at all times relevant acting under color of law and in the course and scope of her duties as either an employee, agent, officer or official of the Defendant North Charleston Police Department and Defendant City of North Charleston. She is believed to be a domiciliary of the County of Charleston, State of South Carolina, or at least was at the time of the alleged incident. She is sued in her individual capacity for compensatory and punitive damages under Federal law.

8.      Defendant Driggers had responsibility for the management, training, and operation of the North Charleston Police Department at all times relevant to this action, and was at all times responsible for the actions of all officers named herein. He is sued in both his individual and representative capacity as the former Chief of Police pursuant to 42 U.S.C. § 1983 and the South Carolina Tort Claims Act that makes the employing entity liable for the torts of its employees. S.C. Code § 15-78-70.

9.      Plaintiff alleges that the Defendant North Charleston Police Department (hereinafter " Defendant NCPD," "NCPD," or "Defendant") and/or the Defendant City of North Charleston (hereinafter "Defendant City," "City," or "Defendant") are liable for the acts and omissions of its employees for the negligence, gross negligence, recklessness and other liability forming conduct that caused harm to the Plaintiff.

ELECTRONICALLY FILED - 2019 Dec 18 8:50 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006538

10.        All Defendant-Individuals were acting within the course and scope of their official duties as employees of the Defendants NCPD and City in relation to these claims.

11.        Defendants Arnold and Driggers were at all relevant times acting under color of law and in the course and scope of their duties as officers and employees for the NCPD and the City. They are sued in their individual capacities for compensatory and punitive damages under Federal law.

12.        Defendants NCPD and the City are political subdivisions of the State of South Carolina and/or some other type of entity responsible for the actions of its agents and employees. Defendants Arnold and Driggers were agents and employees of NCPD and the City, and at all times mentioned herein, were acting within the scope and course of their employment.

13.        Defendants NCPD, City, and Driggers had the right and power to direct and control the manner in which their employees and agents executed their duties.

14.        The negligent and grossly negligent acts, omissions and liability forming conduct of all Defendants includes their agents, principals, employees and servants, both directly and vicariously, pursuant to principles of non-delegable duty, apparent authority, agency, ostensible agency and *respondeat superior*, and the acts and omissions of the above-named Defendants were the direct and proximate cause of the injuries, damages, and losses to the Plaintiff.

15.        All Defendants-entities are sued under Federal law and Federal Causes of Action.

16.        Defendants NCPD, City, and Driggers—in his representative/official capacity as Chief of Police—are also sued under State law causes of action.

ELECTRONICALLY FILED - 2019 Dec 18 8:50 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006538

17.    Punitive damages are not sought against Defendants NCPD, City, and Driggers in his Official former Capacity as Chief of Police for the State law causes of action herein.

18.    Punitive damages are sought against all Defendants sued under Federal law.

## FACTUAL BACKGROUND

19.    Plaintiff realleges and reiterates the preceding paragraphs, as fully as if repeated herein verbatim.

20.    On or around January of 2018, all Defendant NCPD-field officers carried electronic control devices ("ECD") known as Tasers. The term Taser is coined from the name of the company that produces the device, Taser International ("Taser Intl.").

21.    Defendant NCPD began issuing Tasers to its officers on or around 2005, and has since enacted written regulations and policies defining the use of Tasers by NCPD-field officers.

22.    From the time Defendant NCPD first issued Tasers to its field officers, both Defendant NCPD and Taser Intl. defined Tasers as weapons; weapons which—according to Taser Intl. training materials—subjected the person being shocked to over 50,000 volts of regulated electricity.

23.    Although Defendant NCPD knew that the Tasers it issued to its officers were weapons, Plaintiff is informed and does believe that Defendant NCPD allowed its officers to use their Tasers based on a subject's simple noncompliance (referred to as "noncompliance policy" herein) with an NCPD officer's command; a standard that would be inconceivable as grounds for use of any other duty-issued weapon such as a firearm.

ELECTRONICALLY FILED - 2019 Dec 18 8:50 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006538

24.     Plaintiff is further informed and does believe that said Taser-justification policy was a written ordinance and regulation, and was based on decisions of individual policymaking officials, employed and acting on behalf of both Defendants City of North Charleston and the NCPD.

25.     One year after Defendant NCPD issued Tasers to its officers; Defendant NCPD was frequently accused of allowing officers to abuse the use of their Tasers, particularly against the African-American population in North Charleston.

26.     On or around 2006, statistics collected by the *Post and Courier* showed that Defendant NCPD's officers used their Tasers 201 times in an eighteen (18) month period, averaging a Taser discharge once every forty (40) hours within a six (6) month timespan. The Charleston Newspaper also found that Defendant NCPD Officers used their Tasers disproportionately on North Charleston's African American population.

27.     On or around June of 2006, multiple Defendant NCPD officers discharged their Tasers at least six times on Kip Black, an African-American man who was mentally disabled. Black allegedly died from the Taser's exacerbating effects on his pre-existing health condition. Black's family filed a lawsuit against Defendant NCPD in 2008.

28.     Again in June of 2006, one of Defendant NCPD's officers used their Taser on Ms. Paula Pete, an African-American woman and North Charleston resident. At the time the NCPD Officer in-question fired his Taser into Ms. Pete's back, she was walking away from the Officer, posed no threat to the Officer, and was not being taken into custody. Pete subsequently filed a lawsuit against Defendant NCPD in 2008.

ELECTRONICALLY FILED - 2019 Dec 18 8:50 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006538

29.     Again in 2008, Officer Christopher Terry of Defendant NCPD used his Taser on Sergeant Brian Yates during a routine traffic stop while Yates was on leave from active deployment. According to a lawsuit Yates filed in 2008, the NCPD Officer used his Taser on Yates because Yates' mother and brother approached Yates during the traffic stop to talk to Yates and the Officer.

30.     Because of Defendants City and NCPD's noncompliance policy on Taser use, citizens of the City of North Charleston—who were predominantly African-American—were regularly subjected to Taser discharges because of "noncompliance," even though the objective circumstances under which NCPD officers used their Taser weapons were unwarranted and excessive. This conclusion is not only based on the statistics and particular incidents averred in the paragraphs above, but also on additional information to be produced in discovery that is currently in the exclusive possession of Defendants City and NCPD.

31.     The overbroad and unwarranted use of Tasers by Defendant NCPD officers during this time stemmed not only from its written regulations and policies, as well as the affirmative decisions of individual policymaking officials within Defendant City and NCPD, but also stemmed from omissions by policymaking officials by failing to account for the constitutional rights of North Charleston citizens against excessive force that was disproportionately applied to African Americans.

32.     These omissions, coupled with the lax policies and regulations promulgated by Defendants City and NCPD, also manifested a deliberate indifference to the rights of the citizens of North Charleston, and was so persistent, widespread, and permanent that it became a custom and usage with the force of law.

ELECTRONICALLY FILED - 2019 Dec 18 8:50 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006538

33.     On or around 2011, in response to pressure from the North Charleston community and local media outlets, Defendant NCPD issued a report on Taser use among officers within its department. Defendant NCPD concluded that Tasers had been effective because no NCPD officers had been hurt during the previous year. Although the Defendant NCPD classified the Taser as a weapon, it did not consider the instances of unwarranted and excessive Taser use in light of Defendant NCPD's broad and vague policy justifying the use of Tasers.

34.     Further on or around 2011, despite the assertions made by Defendants City and NCPD at the time, a committee recommended that Defendant NCPD increase training and update policy changes regarding when to apply force, including the use of Tasers. Despite this recommendation, Defendant NCPD's officers continued to use their Tasers disproportionately when compared with other cities of the same population and demographics.

35.     Plaintiff is informed and does believe that after the committee report, Defendant NCPD adopted their current policy, which allows NCPD field officers to use their Tasers "when [they] are required to use physical force for protection from assault and/or take a person into custody" (described as "physical force policy" or "policy" herein). Alan Blinder, Manny Fernandez, and Benjamin Mueller, *Use of Tasers Is Scrutinized After Walter Scott Shooting*, N.Y. Times, June 1, 2015, at A1.

36.     On or around 2012, Defendant Eddie Driggers became Chief of Police of Defendant NCPD. From the time Defendant Driggers became Defendant NCPD's police chief until February of 2018, Driggers was at all times aware of Defendant NCPD's physical force policy on Taser use, was regularly copied on all NCPD records

ELECTRONICALLY FILED - 2019 Dec 18 8:50 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006538

regarding Taser use, and continued to actively implement the policy despite the facts alleged herein.

37.     At all times further described herein, Defendant NCPD's physical force policy on Taser use was a written ordinance and regulation within the NCPD, and resulted from the decisions of individual policymaking officials within Defendants City and NCPD, including, but not limited to Defendant Eddie Driggers.

38.     Based on the wording of Defendant NCPD's physical force policy, NCPD officers may use their Tasers against a person every time they are required to use physical force to take the person into custody.

39.     The NCPD physical force policy on Taser use does not define the term "required physical force."

40.     The NCPD physical force policy on Taser use does not further specify the degree of required physical force necessary to warrant an officer's use of a Taser weapon, nor does it specify any contemporaneous limitation directing when the use of a Taser would become improper after the person being taken into custody is complying with an NCPD officer's actions and/or commands.

41.     Defendant NCPD does not further implement any type of training pertaining to the execution of the physical force policy for officers in the field, nor does it offer any guidance or safeguards to define when the use of a Taser against a person would be excessive, malicious, or unreasonable under the circumstances.

42.     In lieu of any specific training of the NCPD physical force policy on Taser use, Defendant NCPD instead delegates all training to Taser Intl. While Taser Intl. training focuses on the basic use of a Taser, it does nothing to clarify or teach the

ELECTRONICALLY FILED - 2019 Dec 18 8:50 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006538

NCPD physical force policy, but instead defers officer training of department policies to Defendant NCPD.

43.     Because of the failure Defendants City, NCPD, and Driggers to train NCPD officers on the physical force policy for Taser use, the field officers of Defendant NCPD used their Tasers 825 times from 2010 to 2014. To put that figure in perspective, officers in a Texas city with the same population as North Charleston only used their Tasers 65 times during the same period of time.

44.     Plaintiff is further informed and does believe that NCPD's excessive use of Tasers disproportionately focused on North Charleston's African American population, based on figures that are currently in the possession of Defendants City and the NCPD.

45.     As Taser use by Defendant NCPD's field officers continued to disproportionately climb, public interest and human rights groups, including Amnesty International, the National Institute of Standards and Technology, and former police officers from departments across the United States, all severely criticized the practice used by Defendant NCPD, of leaning on Taser International for guidance while failing to develop stringent training policies.

46.     Despite this broad criticism, Defendants NCPD, the City, and Driggers continued to administer a vague and overbroad policy regarding the justification for Taser use within the NCPD, allowing NCPD Officers to justify the use of their Tasers whenever any physical force was used by the subject officer to take a person into custody, regardless of the degree of physical force actually necessary under the circumstances.

ELECTRONICALLY FILED - 2019 Dec 18 8:50 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006538

47.      Further, based on records kept by Defendant NCPD, NCPD field officers simply changed the terms they used to justify Taser use when drafting police reports, by using terms such as "resisted detainment," or "took an aggressive stance," when describing the subject the officer(s) tased.

48.      Moreover, based on records kept by Defendant NCPD, Defendants City, NCPD, and Driggers continued to allow NCPD field officers to justify their use of a Taser on the former noncompliance policy. By continuing to sanction the old policy, NCPD officers also justified Taser use in incident reports by stating the subject "failed to comply," or "refused a lawful order."

49.      By maintaining the physical force and noncompliance policies without proper training—which was both deliberately indifferent to constitutional rights of the citizens of North Charleston against excessive force, and grossly negligent—and failing to adequately supervise or review Taser use by NCPD officers through measures such as body cameras, Defendants City, NCPD, and Driggers sanctioned the purposeful omissions in both policy-specificity and training that constituted a practice so persistent, widespread, permanent, and well settled as to constitute the above-described customs and usages with the force of law. This caused the Plaintiff's damages in the specific facts and circumstances described below.

50.      On or around January 9, 2018 at approximately 1:29 A.M., Plaintiff Arkein Campbell—an African American male—was arrested and seized by NCPD Officers—who included, but were not limited to—Defendant Katelyn Arnold.

ELECTRONICALLY FILED - 2019 Dec 18 8:50 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006538

51.       On or around the above date and time, Mr. Campbell was removed from his vehicle by NCPD Officers. He was taken to the ground face down, and handcuffed by NCPD Officers.

52.       After two NCPD Officers placed handcuffs on Mr. Campbell as he was face down on the ground, Mr. Campbell was deemed not to be a threat and was deemed to be detained per NCPD policy.

53.       Nevertheless, on or around the above date and time, Defendant Arnold walked up to Mr. Campbell as he was face down on the ground in handcuffs, initiated the drive stun mode on her taser, and repeatedly tased Mr. Campbell for the purpsoes of what Plaitniff is informed and does believe was meant to torture Mr. Campbell.

54.       Despite Defendant Arnold's blatant violation of department policy and basic tenets of police conduct, Arnold's fellow Officers allowed her to continue to drive stun Mr. Campbell with her taser despite the fact that Mr. Campbell posed no threat to Arnold nor any other person on the scene.

55.       At this time, despite Wilson's full cooperation, Defendant Arnold, either in violation of Defendant NCPD policies and procedures—or alternatively, in keeping with Defendant NCPD's overbroad, inconsistent, vague, and deliberately indifferent physical force and noncompliance policies—and with excessive and unlawful force, repeatedly drive stunned Mr. Campbell, who was handcuffed, defenseless, and in the custody of the NCPD.

56.       At this time, other NCPD Officers further allowed Defendant Arnold to drive stun Campbell despite the fact that Campbell was detained and was not resisting arrest.

ELECTRONICALLY FILED - 2019 Dec 18 8:50 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006538

57.    After using the excessive and unlawful force described above in violation of Mr. Campbell's civil rights, and in violation of the laws of South Carolina and the United States, Defendant Arnold charged Mr. Campbell with failure to stop for a blue light, the unlawful carrying of a pistol, and possession of marijuana.

58.    Plaintiff Campbell was injured from Defendant Arnold's use of her Taser.

59.    Because of the inconsistent and undefined standards in Defendant NCPD's noncompliance and physical force policies on Taser use, as well as the failure of Defendant NCPD to properly train or supervise the use of said policies, Defendants City, NCPD, and Driggers facilitated and caused the Plaintiff's injuries through their reckless indifference for the Plaintiff's constitutional rights.

60.    Despite the clear and obvious excessive force that NCPD Officers used against African American suspects in previous instances, Defendant Driggers and other policy-making authorities, including but not limited to NCPD and the City, did nothing to further investigate this wrongdoing, did nothing to punish and correct such improper behavior, and upon information and belief, these Defendants have an unwritten policy to simply "look the other way" and are in fact deliberately indifferent to the past and current improper behavior of NCPD officers.

61.    This "looking the other way" by the "powers that be" within the NCPD and the City fostered an environment where improper and unconstitutional conduct was condoned, tolerated and emboldened by Defendant Driggers and other policymaking authorities within the NCPD and the City.

62.    These "policy making" Defendants were deliberately indifferent with respect to the failure to train officers such as Defendant Arnold in important types of training such

as "standard operating procedure" and other types of training including but not limited to the use of NCPD's noncompliance and physical force policies regarding Taser use, and failed to temper those policies with any consideration of preventing excessive force and search and seizure of presumed innocent citizens.

63.   Defendant Driggers, NCPD and the City allowed, condoned, encouraged, were deliberately indifferent, emboldened unconstitutional conduct and otherwise acted improperly and unconstitutionally with respect to the improper actions of its officers.

64.   At all material times, each Defendant acted under color of the laws, statutes, ordinances, and regulations of the State of South Carolina.

65.   All Defendants' conduct herein, was contrary to generally accepted, reasonable law enforcement procedures, training and tactics and caused damage to the Plaintiff as laid out in this Complaint.

66.   That acts and omissions, cited above, by all Defendants, were the direct and proximate cause of the injuries, damage, losses of the Plaintiff, including but not limited to pain and suffering, shock, humiliation, shame, embarrassment and anxiety, medical bills, past lost wages, as well as future pain and suffering, shock, humiliation, shame, embarrassment and anxiety, future medical bills, future lost wages, loss of enjoyment of life, and other damages, both economic and non-economic, as may be learned during the discovery of this case.

67.   The acts and/or omissions of the Defendants violated the following clearly established and well-settled Federal and State Constitutional rights of Plaintiff.

ELECTRONICALLY FILED - 2019 Dec 18 8:50 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006538

ELECTRONICALLY FILED - 2019 Dec 18 8:50 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006538

**FOR A FIRST CAUSE OF ACTION**
**(42 U.S.C. § 1983 Improper Seizure, Excessive Force & Due Process Violations)**
**(Defendant Arnold)**

68.     Plaintiff re-alleges and reiterates the preceding paragraphs, as fully as if repeated herein verbatim.

69.     By the acts and omissions described above, Defendants named in this cause of action violated 42 U.S.C. § 1983, depriving Plaintiff of the following clearly-established and well-settled constitutional rights protected by the Fourth and Fourteenth Amendments to the United States Constitution:

        a. The right to be free from unreasonable searches and seizures as secured by the Fourth and Fourteenth Amendments;

        b. The right to be free from excessive and unreasonable force in the course of search or seizures as secured by the Fourth and Fourteenth Amendments;

        c. The right to be free from the use of unlawful force as secured by the Fourth and Fourteenth Amendments;

        d. The right to be free of unlawful, reckless, deliberately indifferent, and conscience shocking deadly and/or excessive force as secured by the Fourteenth Amendment;

        e. The right to be free from deprivation of liberty and injury without substantive due process and from state created/enhanced danger as secured by the Fourteenth Amendment;

        f. And in such other particulars as may be learned through discovery.

70.     As a direct and proximate result of the Defendants' acts and/or omissions as set forth above, Plaintiff Campbell sustained injuries and damages as otherwise set forth in this Complaint.

71.     The conduct of the above-named Defendant Arnold, in her individual capacity, entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and the South Carolina Code.

72.     Plaintiff Campbell is also entitled to reasonable costs and attorney fees under 42 U.S.C. § 1988 and applicable South Carolina Codes and laws.

**FOR A SECOND CAUSE OF ACTION**
**(42 U.S.C. § 1983 Deliberate Indifference)**
**(Defendants City and NCPD)**

73.     Plaintiff re-alleges and reiterates every allegation of the preceding paragraphs, as fully as if repeated herein verbatim.

74.     The unconstitutional actions and/or omissions of Defendants NCPD, the City, and Driggers, as well as other officers employed by or acting on behalf of these Defendants, on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of the NCPD, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policymaking officers for NCPD and the City:

        a. To teach or tolerate the improper handling, investigation and arrest/seizure of a citizen;

        b. To create unnecessary danger and risk of serious harm or death, with deliberate indifference, to citizens of North Charleston and Charleston County;

ELECTRONICALLY FILED - 2019 Dec 18 8:50 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006538

ELECTRONICALLY FILED - 2019 Dec 18 8:50 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006538

c. To use or tolerate inadequate, deficient, and improper procedures for handling, investigating, and reviewing complaints of officer misconduct;

d. To use or tolerate inadequate, deficient, and improper training for use of Taser weapons, lethal force, arresting, investigating incidents, interrogations, questioning, and other use of conduct, and;

e. As may otherwise be learned during discovery in this case.

75. Defendants NCPD, the City, and Driggers in his official capacity, failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline officers of the NCPD with deliberate indifference to the Plaintiff's constitutional rights, which were thereby violated as described above.

76. The unconstitutional actions and/or omissions of Defendant Arnold in her individual and official capacity, and other NCPD officers, as described above, were approved, tolerated, and/or ratified by policymaking officers for the NCPD, the City, and Driggers.

77. The details of this incident have since been revealed to the authorized policymakers within the NCPD and the City, and that such policymakers have direct knowledge of the improper actions. Notwithstanding this knowledge, the authorized policymakers within NCPD and the City have simply ignored these improper actions, have approved of Defendant Arnold's actions, and have made a deliberate choice to endorse this improper and unconstitutional conduct. By so doing, the authorized policymakers within NCPD and the City have shown affirmative agreement with the unlawful and excessive actions of the individual Defendants, and have ratified the unconstitutional acts of the individual Defendant Arnold.

78.     The aforementioned customs, policies, practices, and procedures, the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline, were a moving force and/or a proximate cause of the deprivations of Plaintiff's clearly-established and well-settled constitutional rights in violation of 42 U.S.C. § 1983, as more fully set forth herein.

79.     Defendants above-named in this cause of action subjected Plaintiff to their wrongful conduct, depriving Plaintiff of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiff and others would be violated by their acts and/or omissions.

80.     As a direct and proximate result of the unconstitutional actions, omission, customs, policies, practices and procedures of Defendants above-named in this cause of action, Plaintiff sustained serious harms and losses and is entitled to damages, penalties, costs and attorney fees as set forth above, including punitive damages.

### FOR A THIRD CAUSE OF ACTION
**(Negligence & Gross Negligence— State Tort Claims Act)**
**(As to Defendants Driggers in his Official Capacity, NCPD, & the City)**

81.     Plaintiff re-alleges and reiterates every allegation of the preceding paragraphs, as fully as if repeated herein verbatim.

82.     Defendants above-named in this cause of action departed from the duties of acre required by law enforcement officers and the agencies that hire, train, and employ these officers and were thereby negligent, careless, grossly negligent, reckless, and acted in violation of the duties owed to Plaintiff in that they committed one or more of the following acts and/or omissions or commission, any or all of which were departures from the prevailing duties of care:

ELECTRONICALLY FILED - 2019 Dec 18 8:50 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006538

ELECTRONICALLY FILED - 2019 Dec 18 8:50 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006538

a. in failing to ensure the safety and reputation of the Plaintiff;

b. in failing to appreciate the conditions that existed during the events in question;

c. in failing to adhere to proper law enforcement procedures;

d. in failing to possess probable cause or any other legal or factual justification to torture the Plaintiff with a taser;

e. in failing to have in place proper and adequate policies, procedures and protocols for law enforcement officers to investigate allegations and reports, training of officers or, if such policies, procedures, and protocols were in place, in failing to use due care to enforce them;

f. in such other particulars as may be ascertained through discovery procedures undertaken pursuant to the South Carolina Rules of Civil Procedure.

83.    As a direct and proximate result of the negligence, carelessness, gross negligence, recklessness and departure from the duties of care owed by the above-referenced Defendants in this cause of action, Plaintiff was injured and has suffered severe and extreme emotional distress, anxiety, grief and sorrow and other harms and losses for which the Plaintiff is entitled to recover in an amount to be determined by a jury at the trial of this action.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays for judgment against all Defendants for all actual damages, consequential damages, and punitive damages in an amount to be determined by a jury at the trial of this action as well as attorney's fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988 and for such other and further relief as this Court deems just and proper.

Respectfully Submitted,
CLEKIS LAW FIRM, P.A.

_ s/ *John T. Gentry, III*_____
John T. Gentry, III, Esq.
john@clekis.com
171 Church Street, Suite 160
Charleston, SC  29401
T* (843) 720-3737
F* (843) 577-0460

**ATTORNEY FOR PLAINTIFF
ARKEIN CAMPBELL**

December 18, 2019
Charleston, South Carolina

ELECTRONICALLY FILED - 2019 Dec 18 8:50 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006538